IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-522-D

| | | |
|---|---|---|
| NATHAN P. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF RALEIGH, | ) | |
| | ) | |
| Defendant. | ) | |

Nathan P. Allen ("Allen" or "plaintiff") seeks relief under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), the Americans with Disabilities Act (as amended), 42 U.S.C. §§ 12101–12213 ("ADA"), and North Carolina law. See Compl. [D.E. 1-1]. On August 26, 2013, the City of Raleigh ("City" or "defendant") moved to dismiss Allen's complaint. See [D.E. 6]; Fed. R. Civ. P. 12(b)(1), (6). The City also filed a memorandum in support. See [D.E. 7]. On September 5, 2013, Allen responded in opposition. See [D.E. 8]. On September 19, 2013, the City replied. See [D.E. 9]. As explained below, the City's motion to dismiss is granted in part and denied in part.

I.

Allen is a fifty-two-year-old employee of the City's Public Utilities Department. Compl. ¶¶ 1, 14. He has worked for the City for more than twenty-four years and has held three titles during his tenure: "Water Meter Reader," "Senior Meter Reader," and "Water Meter Mechanic." Id. ¶¶ 15–16, 18, 27. While working as a Water Meter Reader in 2000 or 2001, Allen was injured in a work-related accident and received a 40% permanent partial disability ("PPD") in his worker's compensation case. Id. ¶¶ 6–7. Although Allen's injury limited his ability to lift and perform manual tasks, it did not affect his ability to perform his duties as a Water Meter Reader. Id. ¶¶ 10, 17. Allen continued to work as a Water Meter Reader for many years, until the City promoted him to Senior Meter Reader. Id. ¶ 18. Allen's injury did not impact his ability to perform his duties as

a Senior Meter Reader. Id. ¶¶ 22–23. The City has known of Allen's injury since the time of the accident, and continues to pay for Allen's medical treatment. Id. ¶¶ 12–13.

On December 4, 2012, the City reclassified Allen's position—along with the positions of two other Senior Meter Readers—to Water Meter Mechanic. Id. ¶ 27; see id. Ex. A.[1] When Allen's supervisor informed him of his new job title and the duties it entailed, Allen expressed concern that given his injury and medical restrictions, he would be unable to do the job. Id. ¶ 29. His supervisor responded that Allen "better hope he could perform all duties required of him under the re-classification or else he would find himself doing something that he would not like." Id. ¶ 30. Allen's worker's compensation physician subsequently confirmed that Allen could not perform the essential functions of a Water Meter Mechanic, even with a reasonable accommodation. Id. ¶ 62; see id. Ex. A. The City allowed Allen to continue performing the essential functions of a Senior Meter Reader while working under his new title. Id. ¶ 39; see id. Ex. A.

On February 22, 2013, Allen filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). See id. Ex. A. On April 11, 2013, the City "took the position that" Allen should take a leave of absence without pay until the charge of discrimination was resolved. Id. ¶ 35. On April 25, 2013, Allen's superintendent told Allen that he needed to take "additional leave" without pay pursuant to the Family and Medical Leave Act ("FMLA"). Id. ¶ 38.

On June 21, 2013, Allen filed a complaint against the City in Franklin County Superior Court, alleging failure to accommodate, disability discrimination, and unlawful retaliation under the ADA, age discrimination under the ADEA, and intentional infliction of emotional distress under North Carolina law. Compl. ¶¶ 58–110. On July 19, 2013, the City removed the action to this court. See [D.E. 1]. On August 26, 2013, the City moved to dismiss Allen's complaint. See [D.E. 6]; Fed. R. Civ. P. 12(b)(1), (6).

---

[1] There are three Water Meter Mechanic positions in the City's Public Utilities Department. See City of Raleigh, Employment Opportunities, http://www.raleighnc.gov/employment/content/CorEmployment/Articles/PermWaterMechanicMechanic32313.html (last visited Mar. 4, 2014).

2

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1989) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647.

Before filing suit under the ADA or the ADEA, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. See Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). A plaintiff's failure to exhaust administrative remedies deprives the court of subject-matter jurisdiction over any unexhausted claims. See, e.g., Jones, 551 F.3d at 300–01.

A plaintiff's EEOC charge determines the scope of his right to file suit. In order to ensure that the plaintiff's employer has notice of the plaintiff's allegations and that the EEOC has an opportunity to resolve the parties' dispute, a plaintiff cannot raise claims in litigation that did not appear in his EEOC charge. See Sydnor, 681 F.3d at 593. However, because laypersons, rather than lawyers, often complete EEOC charges, the administrative charge "does not strictly limit" a plaintiff's subsequent civil suit. Id. at 594 (quotation omitted). Instead, the court must construe the charge liberally, Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013) (quotation omitted), and allow the plaintiff to advance claims in litigation that "are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation." Sydnor, 681 F.3d at 594 (quotation omitted).

3

The City argues that this court lacks subject-matter jurisdiction over Allen's ADA and ADEA claims because Allen's complaint exceeds the scope of his EEOC charge [Compl. Ex. A]. Specifically, the City contends that Allen's EEOC charge did not provide sufficient notice of Allen's failure-to-accommodate claim or of the specific allegations underlying his disability- and age-discrimination claims. See [D.E. 7] 8–12; [D.E. 9] 1–2. The City also challenges the court's subject-matter jurisdiction over Allen's unlawful-retaliation claim to the extent that Allen bases it on a conversation with his supervisor regarding his alleged medical limitations, rather than a complaint about his supervisor's behavior. See [D.E. 9] 4–5. Relatedly, the City argues that because Allen's EEOC charge listed December 4, 2012—the date the City reclassified Allen's position—as the "earliest" and "latest" date of discrimination, the court cannot consider other allegedly retaliatory actions occurring after that date, namely, the City's alleged suggestion that Allen take leave from work without pay on April 11, 2013, and April 25, 2013. See [D.E. 7] 12–13; [D.E. 9] 2–4; cf. Compl. ¶¶ 35, 38.[2]

Allen's EEOC charge sufficiently put the EEOC and the City on notice of his failure-to-accommodate claim. Although his charge does not allege that he requested, and that the City denied him, a reasonable accommodation, it contains facts that would—and did—prompt an investigation of this claim. Allen states that he had worked as a Senior Meter Reader until the City reclassified his position to a Water Meter Mechanic, that "there is no accommodation that [would] allow [him] to perform [the] duties" of his new position, and that the City had allowed him to continue performing the duties of his previous position. Compl. Ex. A. In response to Allen's EEOC charge,

---

[2] The City argues that the court cannot consider the events of April 11 and April 25, 2013 with respect to Allen's disability- and age-discrimination claims. Allen does not allege, however, that the City suggested that he take leave from work without pay because of his disability or his age. Allen bases his disability- and age-discrimination claims on the City's decision to reclassify his position in December 2012, see Compl. ¶¶ 75, 77, 97, and his unlawful-retaliation claim (in part) on the City's alleged suggestion that he take leave from work without pay in April 2013. See id. ¶ 88. Accordingly, the court considers whether the events of April 11 and April 25, 2013 fall outside the scope of Allen's EEOC charge with respect to his unlawful-retaliation claim.

4

the City stated that it had reasonably accommodated Allen's alleged disability by allowing him to perform the duties of a Senior Meter Reader. Id. ¶ 39. Accordingly, the City "was on notice from the beginning that it was accused of not providing a disabled plaintiff with a reasonable accommodation." Sydnor, 681 F.3d at 595. Moreover, because the primary accommodation Allen proposes—allowing him to retain the title Senior Meter Reader while performing the duties of that position—"flow[s] logically" from the text of the charge, the City "should not have been caught off guard" when Allen eventually raised it. Id. at 596; see Compl. ¶¶ 41, 63–64. Because Allen exhausted his administrative remedies with respect to his failure-to-accommodate claim, the court denies the City's motion to dismiss that claim for lack of subject-matter jurisdiction. See, e.g., Sydnor, 681 F.3d at 597; Collins v. Franklin Cnty., 861 F. Supp. 2d 670, 675–76 (E.D.N.C. 2012); Bannister v. Wal-Mart Stores E., L.P., 843 F. Supp. 2d 610, 617–18 (E.D.N.C. 2012).

Similarly, Allen's charge sufficiently put the EEOC and the City on notice of his disability- and age-discrimination claims. Allen checked the "disability" and "age" boxes on his charge form, and the text of the charge mentions both disability and age discrimination. Compl. Ex. A; see Jones, 551 F.3d at 301; Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002); Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999); Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995). "[U]ntrained parties [need not] provide a detailed essay to the EEOC in order to exhaust their administrative remedies." Sydnor, 681 F.3d at 594. Accordingly, the court denies the City's motion to dismiss Allen's disability- and age-discrimination claims for lack of subject-matter jurisdiction.

Finally, to the extent the City challenges the court's subject-matter jurisdiction over Allen's unlawful-retaliation claim, the court grants the City's motion in part. In his EEOC charge, Allen alleged that the City reclassified his position on December 4, 2012, to retaliate against him for filing an internal complaint about his supervisor's behavior. See Compl. Ex. A. He adds to his complaint an allegation of unlawful retaliation that he did not include in his EEOC charge and that was based

5

on events that allegedly occurred in April 2013 after he filed his EEOC charge, namely, the City suggesting that he take leave from work without pay in retaliation for requesting a reasonable accommodation from his supervisor. See id. ¶¶ 85, 88. The two retaliation allegations —one in December 2012 and the other in April 2013—are not reasonably related to one another. Moreover, Allen's charge does not allege a pattern of retaliatory conduct by his supervisor that began after Allen complained sometime before December 2012 about his supervisor's behavior. Nor does Allen's charge indicate that his supervisor's retaliatory behavior was ongoing. To the contrary, it states that any retaliatory action his supervisor took began and ended on December 4, 2012, the date the City reclassified Allen's position. See id. Ex. A. Because Allen's additional allegation of unlawful retaliation in April 2013 in his complaint references a different time frame and different discriminatory conduct from the retaliation allegation in his EEOC charge, he has failed to exhaust his administrative remedies with respect to the alleged April 2013 retaliation. See Jones, 551 F.3d at 304 (concluding that plaintiff exhausted her administrative remedies with respect to a claim of retaliatory termination arising after she filed her charge where her charge indicated that her employer's retaliatory conduct was ongoing); Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005). Therefore, with respect to retaliation, the court has subject-matter jurisdiction only over Allen's claim that the City reclassified his position on December 4, 2012, to retaliate against him for filing an internal complaint about his supervisor's behavior. See Compl. Ex. A; id. ¶ 85.

III.

In analyzing a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions

6

devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

The court first addresses Allen's failure-to-accommodate claim. See Compl. ¶¶ 58–71. To state a claim against an employer for failure to accommodate under the ADA, a plaintiff must plausibly allege that (1) he has a disability within the meaning of the statute; (2) the employer had notice of his disability; (3) with a reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such an accommodation. See, e.g., Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

Allen has plausibly alleged each of these elements. First, he maintains that he suffers from both a PPD and cancer, and that these conditions impact a major life activity, namely, his ability to lift and perform manual tasks. Compl. ¶ 59. He also alleges that the City had notice of his disability, id. ¶ 60, that he could perform the essential functions of a Senior Meter Reader with or without a reasonable accommodation, id. ¶ 61, and that the City refused to allow him to continue working under the title of Senior Meter Reader. Id. ¶ 63.

Despite these plausible allegations, the City argues that Allen has not properly pleaded the third and fourth elements of a failure-to-accommodate claim. In support, it cites Allen's statements in both his EEOC charge and complaint that there is "no accommodation" that will allow him to perform the essential functions of a Water Meter Mechanic. [D.E. 7] 18–19; see Compl. Ex. A; id. ¶ 62. The City also argues that it could not have refused a request for a reasonable accommodation that Allen never made. See [D.E. 7] 17–19; [D.E. 9] 6.

The City's arguments fail. As for the third element of Allen's failure-to-accommodate claim, a "qualified individual" under the ADA can perform the essential functions of the position he "holds or desires" with or without a reasonable accommodation. See 42 U.S.C. § 12111(8).

7

Because Allen plausibly contends that he can perform the essential functions of the position he desires—Senior Meter Reader—with or without a reasonable accommodation, he has sufficiently pleaded the third element. As for the fourth element, a plaintiff's request need not mention the ADA or "formally invoke the magic words 'reasonable accommodation.'" EEOC v. C.R. England, Inc., 644 F.3d 1028, 1049 (10th Cir. 2011). Rather, "[w]hat matters under the ADA [is] . . . whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Wilson, 717 F.3d at 347 (quotation omitted) (second alteration in original). Allen claims that he informed his supervisor "that he was concerned about his employment because of his inability to perform the essential job functions of a 'Water Meter Mechanic'" given his PPD and medical restrictions. Compl. ¶ 67. Allen also alleges that his supervisor told him in December 2012 that he had "better hope he could perform all duties required of him under the re-classification or else he would find himself doing something that he would not like." Id. ¶ 30. These allegations plausibly suggest that Allen requested a reasonable accommodation, and that the City refused to engage in an interactive process to identify one. See, e.g., Moss v. Pasquotank Cnty., No. 2:10-CV-56-BR, 2012 WL 2325846, at *5–7 (E.D.N.C. June 19, 2012) (unpublished). Accordingly, the court denies the City's motion to dismiss Allen's failure-to-accommodate claim under the ADA for failure to state a claim.

Next, the court addresses Allen's disability-discrimination claim. See Compl. ¶¶ 72–82. To state a claim of disability discrimination under the ADA, a plaintiff must plausibly allege that (1) he has a disability within the meaning of the statute; (2) he is a "qualified individual," meaning that he could perform the essential functions of his job; and (3) his employer took an adverse action against him because of his disability. See, e.g., Young v. United Parcel Serv., Inc., 707 F.3d 437, 443 (4th Cir. 2013).

An adverse employment action must "adversely affect[] the terms, conditions, or benefits of

8

the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quotation omitted); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375–76 (4th Cir. 2004); Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002); Pledger v. UHS-Pruitt Corp., No. 5:12-CV-484-F, 2013 WL 1751373, at *6 n.10 (E.D.N.C. Apr. 23, 2013) (unpublished); Corbett v. McHugh, No. 5:11-CV-742-BO, 2013 WL 312382, at *3 (E.D.N.C. Jan. 25, 2013) (unpublished); Gray v. Walmart Stores, Inc., No. 7:10-CV-171-BR, 2011 WL 4368415, at *2 (E.D.N.C. Sept. 19, 2011) (unpublished). Typical examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255–56 (4th Cir. 1999); see Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc). Reassignment—and a corresponding change in working conditions—can constitute an adverse employment action, but only if it has a "significant detrimental effect" on the plaintiff. Boone, 178 F.3d at 256; see Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010), aff'd, 440 F. App'x 169 (4th Cir. 2011) (per curiam) (unpublished).

Allen's disability-discrimination claim against the City fails because he has failed to plausibly allege that the City's reclassification of his position constitutes an adverse employment action. Allen does not allege that the City reduced his pay, or that the title "Water Meter Mechanic" is a lesser title than "Senior Meter Reader." Moreover, given that the City allowed Allen to continue performing the job functions of a Senior Meter Reader, Allen did not experience a change in working conditions or job duties and responsibilities. To the extent Allen argues that he is now subject to immediate termination because he cannot perform the essential functions of the position of Water Meter Mechanic (an allegation that does not appear in his complaint), a plaintiff does not plausibly allege that he suffered an adverse action by speculating about the future adverse consequences of an employment decision. See [D.E. 8] 18; Holland, 487 F.3d at 219; Gray, 2011 WL 4368415, at *3. Because Allen does not plausibly allege that he suffered an adverse employment action, the court

9

grants the City's motion to dismiss Allen's disability-discrimination claim under the ADA for failure to state a claim. See, e.g., Corbett, 2013 WL 312382, at *3; Gray, 2011 WL 4368415, at *3–4; see also McNair v. Computer Data Sys., Inc., 172 F.3d 863, 1999 WL 30959, at *3 (4th Cir. 1999) (per curiam) (unpublished table decision).

Alternatively, Allen has failed to plausibly allege that the City reclassified his position because of his alleged disability. The City reclassified not only Allen's position, but also the positions of two other Senior Meter Readers. See Compl. Ex. A. Moreover, according to Allen, the City had known of his alleged disability for approximately thirteen or fourteen years before taking any allegedly adverse action, and had promoted him in the interim. See id. ¶¶ 6–7, 12, 18. On these facts, the allegation of disability discrimination is not plausible. See, e.g., Brewington v. Getrag Corp., Civil No. 5:09CV31-V, 2011 WL 4829399, at *6 (W.D.N.C. Oct. 12, 2011) (unpublished) (concluding that plaintiff did not plausibly allege disability discrimination where employer knew of plaintiff's disability for approximately three years before taking an allegedly adverse action); see also Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 215 (4th Cir. 1994) (describing the "strong inference of nondiscrimination" that arises when the same employer hires and fires the plaintiff). Accordingly, Allen does not state a claim of disability discrimination under the ADA.

Next, the court addresses Allen's unlawful-retaliation claim concerning the events in December 2012. See Compl. ¶¶ 83–90. To state a claim of unlawful retaliation under the ADA, a plaintiff must plausibly allege that (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected conduct and the adverse employment action. See, e.g., Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012). With respect to the first element, a plaintiff need not establish that the conduct he opposed actually constituted a violation of the ADA. "But a complainant must allege the predicate for a reasonable, good faith belief that the behavior [he] ... oppos[ed] violates the ADA." Freilich, 313 F.3d at 216; see, e.g., Reynolds, 701 F.3d at 154; Bess v. Cnty. of Cumberland, 5:11-CV-388-BR, 2011 WL

10

4809879, at *7 (E.D.N.C. Oct. 11, 2011) (unpublished).

Allen alleges that the City reclassified his position on December 4, 2012, to retaliate against him for filing an internal complaint about his supervisor's behavior. See Compl. Ex. A; id. ¶¶ 84–85. Allen's complaint states that he based his grievance on "the repeated instances of derogatory and disrespectful statements [that his supervisor] made towards [him], which created what [he] perceived to be a hostile work environment." Id. ¶ 25. Nowhere does Allen allege that he complained of disability discrimination in the grievance. By his own admission, rather, Allen did not "file[] any complaint based on discrimination." Id. Ex. A. Thus, although Allen might have believed his supervisor's behavior to be unlawful, he does not plausibly allege that he believed his supervisor's behavior violated the ADA. Accordingly, he fails to state a claim of unlawful-retaliation under the ADA, and the court dismisses this claim. See, e.g., Reynolds, 701 F.3d at 154; A Society Without A Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011); Jordan v. Alt. Res. Corp., 458 F.3d 332, 340–43 (4th Cir. 2006); Freilich, 313 F.3d at 216–17; Gray, 2011 WL 4368415, at *4–6; Albero v. City of Salisbury, 422 F. Supp.2d 549, 560 n.43 (D. Md. 2006).

Next, the court addresses Allen's age-discrimination claim. See Compl. ¶¶ 91–99. To state a claim of age discrimination under the ADEA, a plaintiff must plausibly allege that (1) he is a member of the ADEA's protected group; (2) he suffered an adverse employment action; and (3) his employer took adverse action against him because of his age. See, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176–78 (2009); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514–15 (2002); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142–49 (2000); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311–12 (1996); Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991).

Allen claims that the City reclassified his position on December 4, 2012, because of his age. This claim fails for the same reasons his disability-discrimination claim fails. As discussed, Allen has failed to plead an adverse employment action. Moreover, given that the City reclassified the positions of three Senior Meter Readers on December 4, 2012, Allen has failed to allege facts

11

sufficient to support a reasonable inference that the City decided to reclassify Allen's position because of his age. Accordingly, the court dismisses Allen's age-discrimination claim under the ADEA. See, e.g., Barcliff v. N.C. League of Municipalities, No. 5:10-CV-244-D, 2011 WL 3290578, at *7 (E.D.N.C. Aug. 1, 2011) (unpublished).

Finally, the City moves to dismiss Allen's claim for intentional infliction of emotional distress under North Carolina law. See Compl. ¶¶ 100–10; Fed. R. Civ. P. 12(b)(6). Stating a viable claim of intentional infliction of emotional distress under North Carolina law for conduct arising in the workplace is very difficult. See, e.g., Roach v. Hilton World-Wide, Inc., No. 5:12-CV-309-D, 2013 WL 556195, at *3 (E.D.N.C. Feb. 12, 2013) (unpublished) (collecting cases), aff'd, 533 F. App'x 341 (4th Cir. 2013) (per curiam) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544–45 (E.D.N.C. 2008) (collecting cases); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999); Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992); Lenins v. K-Mart Corp., 98 N.C. App. 590, 598–99, 391 S.E.2d 843, 848 (1990); Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986). Allen's claim for intentional infliction of emotional distress under North Carolina law falls well short of the required standard and is dismissed.

### III.

In sum, defendants' motion to dismiss [D.E. 6] is GRANTED in part and DENIED in part. Count one, which alleges failure to accommodate under the ADA, survives the motion to dismiss under both Rules 12(b)(1) and 12(b)(6). Counts two, three, four, and five are DISMISSED.

SO ORDERED. This 4 day of March 2014.

JAMES C. DEVER III
Chief United States District Judge